UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| BRYON U. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 21-cv-08458-LB<br><br>**ORDER GRANTING SUMMARY JUDGMENT BUT IDENTIFYING PLAUSIBLE NEGLIGENCE CLAIM**<br><br>Re: ECF No. 64 |

**INTRODUCTION**

Plaintiff Bryon Jackson sued Target Corporation, claiming that a Target employee intentionally hit him with a shopping cart, injuring his kidney.[1] Target moved for summary judgment on the grounds that the plaintiff cannot prove an intentional act, it in any event is not vicariously liable for the intentional torts of its employees, and the plaintiff cannot recover punitive damages.[2] The court can decide the motion without oral argument, N.D. Cal. Civ. L.R. 7-1(b), and grants summary judgment on the assault and battery claims.

That said, the plaintiff — who is representing himself — plausibly pleads facts that, if true, establish a claim of negligence. Federal courts must construe pro se complaints liberally. *Hughes*

---

[1] Compl. – ECF No. 1 at 9–10. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 64.

1  *v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040–41, 1043 (9th Cir. 2005)

2  (a pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon

3  which they rest; he need not plead specific legal theories so long as sufficient factual averments

4  show that he may be entitled to some relief). If the plaintiff wants to proceed on his negligence

5  claim, he can notify the court by July 13 by filing a one-page notice of his intent to do so. At the

6  July 20 case-management conference, the court will consider the next steps in the case, including

7  appointment of counsel.

## STATEMENT

9       In his verified complaint, the plaintiff declares under penalty of perjury that the following facts

10  are true. On July 7, 2021, he went to a Starbucks at the Target store located at 2700 Fifth Street,

11  Alameda, California, to buy lunch. When he was there, an employee deliberately hit him with a

12  trolley cart, injuring his right kidney. He reported the incident and suffers pain to this day.[3]

13      Target's in-store video-surveillance system has video footage of the incident. The camera has a

14  fish-eye lens aimed at the store's entrance. The incident took place in the Starbucks area, shown in

15  the upper left corner of the film. The events at issue are distant but discernable in full-screen mode.

16      At 12:25:11 p.m., the plaintiff steps away from his place in line at Starbucks. As he is walking,

17  a cart moves into the camera zone and apparently hits him. Immediately before and at the moment

18  of contact, the plaintiff is looking ahead and possibly downwards; the cart comes from his left and

19  when it contacts him, he turns to his left and raises his hands. He then steps to the side to allow the

20  cart's pusher, identified by Target as its employee Kimara Smith, to move past him. He follows

21  Ms. Smith as she walks away, out of camera sight. For the next fourteen minutes the plaintiff

22  walks around the coffee shop area, moving in and out of the far end of the camera's vision. The

23  video shows him speaking to a female employee at 12:29 p.m., waiting at 12:30 p.m., speaking to

24  the same female employee at 12:31 p.m. and 12:35 p.m., and leaving the store at 12:39 p.m.[4]

25

26

27  _____

[3] Compl. – ECF No. 1 at 10.

28  [4] Pedone Decl. – ECF No. 64-1 at 2 (¶¶ 5–11); Video, Ex. C to *id.*

1
2
3
4
5
6
7
8
9
10

The plaintiff described the incident in his deposition. He "went [to Target] to get lunch, and [he] went to the Starbucks coffee shop." He described what happened: "like somebody just exerted a pressure to deliberately cause harm. It was, like, an increased velocity that was coming from the chair. It was obvious that the person exerted that force to create some damage in me." He "didn't know [that Ms. Smith] was going to hit [him] with the cart." He was standing still in line, looking ahead at the barista. He believed the hit was intentional because he "went over to her and asked her, are you crazy, and [he] yell[ed] at her and asked her if she's crazy, and she said, get out of here, [racial slur]." Although the defendant "yelled" his question, he believes it is "possible" nobody else heard her comment, as she "just said it under her breath." He had never met the employee before.[5]

11
12
13

The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[6] The court has diversity jurisdiction: the parties are diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).[7]

14

**STANDARD OF REVIEW**

15
16
17
18
19
20

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

21
22
23
24

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving

25
26
27
28

[5] Jackson Dep., Ex. B to Pedone Decl. – ECF No. 64-1 at 13 (p. 44:16–20), 14 (p. 47:16–19, 24–25), 15 (p. 48:8–12), 17 (p. 50:7–24), 19 (p. 67:13–24).

[6] Consents – ECF Nos. 6, 12.

[7] Notice of Removal – ECF No. 1.

party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the non-moving party does not produce evidence to show a genuine issue of material fact, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

Federal courts must construe pro se complaints liberally. *Hughes*, 449 U.S. at 9; *Hearns*, 413 F.3d at 1040. A pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. He need not plead specific legal theories so long as sufficient factual averments show that he may be entitled to some relief. *Id.* at 1041.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**ANALYSIS**

The plaintiff claims that Target's employee intentionally assaulted and battered him with the shopping cart. Target moved for summary judgment, contending first that the undisputed facts do not show an intentional tort by Ms. Smith because as to assault, the plaintiff did not apprehend the incoming shopping cart, and as to both assault and battery, Ms. Smith did not have the requisite intent. Target also argues that even if there is a genuine dispute about whether Ms. Smith committed assault or battery, Target is not vicariously liable for its employee's intentional tort under these circumstances.[8] The court grants summary judgment to Target because Target isn't vicariously liable for Ms. Smith's conduct.

The first issue is whether the plaintiff's evidence is sufficient to establish triable issues of fact about whether Ms. Smith committed assault and battery against the plaintiff. (Even though this issue is mooted by the conclusion that Target is not vicariously liable for Ms. Smith's conduct, the court explains the issue fully because that explanation informs the vicarious-liability analysis.)

The elements of assault are that (1) the defendant "acted, intending to cause harmful or offensive contact," (2) the plaintiff "reasonably believed that he was about to be touched in a harmful or offensive manner," (3) the plaintiff "did not consent to defendant's conduct," (4) the plaintiff "was harmed or offended," and (5) the defendant's conduct "was a substantial factor in causing [the] plaintiff's harm." *Foley v. Bates*, No. C07-0402 PJH, 2007 WL 1430096, at *6 (N.D. Cal. May 14, 2007).

Regarding whether the plaintiff "reasonably believed that he was about to be touched in a harmful or offensive manner," he testified — in response to being asked whether he had ever seen Ms. Smith before the incident — that he hadn't and that he "didn't know she was going to hit [him] with the cart."[9] That statement doesn't definitively resolve whether he was aware of the incoming cart before it hit him, given the general nature of the question. Also, in his opposition, the plaintiff says that he "saw with [his] own '[e]yes'" that Ms. Smith "exerted additional force"

---

[8] Mot. – ECF No. 64.

[9] Jackson Dep., Ex. B to Pedone Decl. – ECF No. 64-1 at 14 (p. 47:24–25).

on the cart before the contact. The plaintiff cites page sixty-one of his deposition transcript for this fact, but neither party attached page sixty-one to their briefing.[10] In theory, the court could ask the parties to supplement the record with the full deposition transcript, in which case the plaintiff's testimony would amount to sufficient evidence for his assault claim to survive summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88 (at the summary-judgment stage, the court must draw all factual inferences in the non-moving party's favor). But as explained below, Target would not be vicariously liable for Ms. Smith's conduct anyway.

The second issue is whether Ms. Smith acted with the intent required for assault and battery. The inquiry turns largely on whether a dispute of material fact is established by Ms. Smith's telling the plaintiff to "get out of here" and her use of a racial slur.

The elements of a claim of battery are (1) the defendant touched the plaintiff with the intent to harm or offend the plaintiff, (2) the plaintiff did not consent to the touching, (3) the plaintiff was harmed or offended by the touching, and (4) a reasonable person would have been offended by the touching. *So v. Shin*, 212 Cal. App. 4th 652, 669 (2013) (citing CACI Jury Instr. 1300 (2013)); *Avina v. United States*, 681 F.3d 1127, 1130–31 (9th Cir. 2012).

Regarding a defendant's intent to harm or offend the plaintiff, courts have explained the concepts of harmful and offensive contact. As for "harm," "the least touching may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark." *People v. Mansfield*, 200 Cal. App. 3d 82, 88 (1988). And "[a] touching is offensive if it offends a reasonable sense of personal dignity." *Foley*, 2007 WL 1430096, at *6. Courts also say that "the element of intent is satisfied if the evidence shows [that the] defendant acted with a 'willful disregard' of the plaintiff's rights." *Ashcraft v. King*, 228 Cal. App. 3d 604, 613 (1991).

Few cases involve circumstances where the evidence of intent is mostly a standalone comment after the event giving rise to liability. Certainly, slurs can demonstrate racial animus. *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987) (allegations that police officers directed racial

---

[10] Opp'n – ECF No. 67 at 3.

United States District Court
Northern District of California

slurs at the plaintiff were sufficient to demonstrate racial animus). And generally speaking, comments can constitute evidence of intent. *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 505–06 (9th Cir. 2016) (racially charged code words may provide evidence of discriminatory intent).

As for whether the requisite intent can be inferred from the defendant's post-incident words or conduct, courts can look to "the rules of the criminal law . . . that define assault and battery" in analyzing this and other aspects of the torts of assault and battery. *Bartosh v. Banning*, 251 Cal. App. 2d 378, 387 (1967). In that regard, "[t]he intent with which an act is committed is a question of fact, and may be inferred from the surrounding circumstances." *People v. Rupert*, 20 Cal. App. 3d 961, 971 (1971); Cal. Pen. Code § 29.2(a) ("The intent or intention is manifested by the circumstances connected with the offense."). And "[i]n the crime[] of simple assault . . . , the jury may infer from [the] defendant's conduct that he entertained the necessary intent." *People v. Hood*, 1 Cal. 3d 444, 458 n.7 (1969).

A selection of authorities demonstrates the general principle that post-incident words or conduct are valid evidence of intent. At least in Nevada, for example, "[t]he fact finder [evaluating a battery claim] can consider post-incident conduct, such as a lack of remorse, an effort to conceal the conduct, demeanor inconsistent with the defendant's version of events, or an attempt to flee police[,] as evidence of intent." *Jaross v. Phillips*, No. 2:10-cv-01631-PMP, 2011 WL 3471865, *6 (D. Nev. Aug. 9, 2011) (collecting state cases). California courts have used similar reasoning. In evaluating the crime of assault with a deadly weapon, for instance, the defendant's post-incident conduct "may throw light on his original intent." *See People v. Dodini*, 51 Cal. App. 179, 180 (1921) (a defendant's desisting based on a motive such as "remorse" could help reveal his "original intent"). As a harsher example, a defendant's "statements after [a] murder that he was angry with the victim and wanted to kill her permit an inference of intent to inflict extreme pain." *People v. Dalton*, 7 Cal. 5th 166, 250 (2019) (citing *People v. Cole*, 33 Cal. 4th 1158, 1172, 1214 (2004)).

1    Here, the plaintiff testified that Ms. Smith said "get out of here, [racial slur]" shortly after

2    hitting the plaintiff with her shopping cart.[11] This testimony is at least evidence that Ms. Smith

3    intended the contact. The plaintiff also testified that the cart accelerated before the contact.[12] There

4    is thus a triable issue of fact about whether Ms. Smith acted with the requisite intent.

5    Granted, in between the shopping-cart contact and the alleged slur, the plaintiff walked over to

6    Ms. Smith, yelled at her, and asked her whether she was crazy. Thus, when Ms. Smith said "get

7    out of here, [slur]," she could have been reacting to the yelling rather than evincing any feeling she

8    had toward the plaintiff since before the contact.[13] But at the summary-judgment stage, the court

9    cannot weigh conflicting evidence, must view the evidence in the light most favorable to the non-

10   moving party, and must draw all factual inferences in that party's favor. *Matsushita Elec. Indus.*

11   *Co.*, 475 U.S. at 587–88.

12   For the same reasons, the court does not view the video evidence as dispositive at this stage.

13   The video shows that the plaintiff walked into the path of Ms. Smith's cart, but that does not

14   preclude the possibility that Ms. Smith recognized the impending collision and still intentionally

15   contacted the plaintiff with the cart.[14] *Id.*; *Campbell v. Feld Ent., Inc.*, 75 F. Supp. 3d 1193, 1208–

16   09, 1217–18 (N.D. Cal. 2014) (video footage was "ambiguous on [a given] point," and "at the

17   summary judgment stage[,] the [c]ourt must draw all reasonable inferences in [the non-moving

18   party]'s favor," so the court held that relatively slight bodily contact was enough for the plaintiff's

19   assault and battery claims to survive summary judgment, given all the surrounding circumstances).

20   The next (and dispositive) issue is whether Target is vicariously liable for its employee's

21   battery under these circumstances.

22   Under the doctrine of respondeat superior, "an employer may be held vicariously liable for

23   torts committed by an employee within the scope of employment." *Patterson v. Domino's Pizza,*

24   *LLC*, 60 Cal. 4th 474, 491 (2014). The doctrine applies to intentional torts: an employer is liable

25

26   [11] Jackson Dep., Ex. B to Pedone Decl. – ECF No. 64-1 at 14 (p. 47:16–19).

     [12] *Id.* at 19 (p. 67:13–17).

27   [13] *Id.* at 14 (p. 47:16–19).

28   [14] Video, Ex. C to Pedone Decl. – ECF No. 64-1 at 2 (¶ 12) (providing link).

United States District Court
Northern District of California

for intentional torts (even crimes) if the acts fall within the scope of employment. *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 967 (1986). The employee does not need to have been furthering the employer's interests. *Carr v. Wm. C. Crowell Co.*, 28 Cal. 2d 652, 656 (1946). But the employer is not liable if the intentional act does not have a causal nexus to the employee's work. *Id.* at 656–57.

Torts are committed within the scope of employment when they are "'engendered by' or an 'outgrowth' of [the] employment." *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298 (1995). Vicarious liability is not imposed if the employee "*substantially* deviates from the employment duties for personal purposes." *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1005 (1995). The question of whether an employee acted within the scope of his or her employment is ordinarily a question of fact. *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 213 (1991). It becomes a question of law only "when the facts are undisputed and no conflicting inferences are possible." *Id.* Courts "look[] to the foreseeability of the employee's conduct, whether it be authorized or unauthorized, tortious or criminal, because the California rule reflects the central justification for respondeat superior liability: that losses fairly attributable to an enterprise — those which foreseeably result from the conduct of the enterprise — should be allocated to the enterprise as a cost of doing business." *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010) (cleaned up).

On the one hand, the alleged battery here might be described as related to Ms. Smith's employment: it arose out of her pushing a shopping cart around the store, and Ms. Smith's "entire association with plaintiff" was because of "[her] employment."[15] *Carr*, 28 Cal. 2d at 656–57. Also, Target's "enterprise required an association of employees with third parties, attended by the risk that someone might be injured." *Id.* at 656. That a customer would be struck by a shopping cart being pushed by an employee in a Target store is foreseeable to some degree. *Palsgraf v.*

---

[15] Jackson Dep., Ex. B to Pedone Decl. – ECF No. 64-1 at 15 (p. 48:9–14) (the plaintiff had never seen Ms. Smith before).

1   *Long Island R.R. Co.*, 248 N.Y. 339, 334 (1928) (the risk reasonably perceived to exist defines the

2   duty to be obeyed).

3       But when "an employee inflicts an injury out of personal malice[] not engendered by the

4   employment," the employer is not liable. *Carr*, 28 Cal. 2d at 656. As explained above, the notion

5   that Ms. Smith committed an intentional tort rests on her (alleged) post-incident, racist comment.

6   And that comment shows that Ms. Smith's intent did not originate from her work duties. *See id.* at

7   654, 657 (employer liable where a coworker threw a hammer at the plaintiff as part of an

8   altercation between the two over how to go about their work of laying flooring). In *Farmers Ins.*

9   *Grp.*, the California Supreme Court thoroughly illustrated this distinction: the employer is liable

10  only where the "assault [was] precipitated by a work-related dispute." 11 Cal. 4th at 1004–09

11  ("[T]he mere fact that an employee has an opportunity to abuse facilities or authority necessary to

12  the performance of his or her duties does not render the employer vicariously liable.") (collecting

13  cases "to compare the types of situations in which the respondeat superior doctrine has and has not

14  been applied"). Here, the assault was precipitated only by (alleged) racism or personal malice. The

15  court thus grants Target's motion for summary judgment on the assault and battery claims, on the

16  ground that Target is not vicariously liable for Ms. Smith's conduct.

17      The next issue is the plaintiff's claim for punitive damages. The court dismissed the claim

18  previously with leave to amend. The plaintiff did not amend. Target in any event is not liable:

19          An employer shall not be liable for [punitive] damages pursuant to
20          subdivision [§ 3294(a)] based upon acts of an employee of the employer, unless
            the employer had advance knowledge of the unfitness of the employee and
21          employed him or her with a conscious disregard of the rights or safety of others or
            authorized or ratified the wrongful conduct for which the damages are awarded or
22          was personally guilty of oppression, fraud, or malice. With respect to a corporate
            employer, the advance knowledge and conscious disregard, authorization,
23          ratification or act of oppression, fraud, or malice must be on the part of an officer,
            director, or managing agent of the corporation.
24

25  Cal. Civ. Code § 3294(b). Malice is "conduct which is intended by the defendant to cause injury to

26  the plaintiff or despicable conduct which is carried on by the defendant with a willful and

27  conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1).

28

United States District Court
Northern District of California

1    No facts suggest that Target had advance notice of its employee's unfitness or that a corporate

2    officer ratified, authorized, or participated in the alleged conduct. The court thus grants Target

3    summary judgment on the claim for punitive damages.

4    A final issue is whether the facts support a claim for negligence.

5    Federal courts must construe pro se complaints liberally. *Hughes*, 449 U.S. at 9; *Hearns*, 413

6    F.3d at 1040. A pro se plaintiff need only provide defendants with fair notice of his claims and the

7    grounds upon which they rest. *Hearns*, 413 F.3d at 1043. He need not plead specific legal theories

8    so long as sufficient factual averments show that he may be entitled to some relief. *Id.* at 1041.

9    A plaintiff may amend his complaint with the court's leave, and "[t]he court should freely give

10   leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may granted as late as

11   during or after trial. Fed. R. Civ. P. 15(b). Under Rule 15, "leave to amend . . . should be granted

12   more liberally to pro se plaintiffs." *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005) (cleaned

13   up). For example, where a plaintiff raises a new claim at the summary-judgment stage, it "lies

14   within the discretion of the district court" to allow him to amend the complaint accordingly. *Brass

15   v. Cnty. of Los Angeles*, 328 F.3d 1192, 1197 (9th Cir. 2003); *Desertrain v. City of Los Angeles*, 754

16   F.3d 1147, 1154–55 (9th Cir. 2014) (listing factors to consider when construing a new argument

17   raised in a motion for summary judgment as a motion for leave to amend under Rule 15).

18   The elements of a negligence claim are (1) the existence of a duty to exercise due care, (2)

19   breach of that duty, (3) causation, and (4) damage. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500

20   (2001).

21   The plaintiff claimed only assault and battery. But this case is about a collision between the

22   plaintiff and a shopping cart being pushed by a Target employee as the two crossed paths. The

23   plaintiff plausibly alleges negligence, and he argued negligence in his opposition.[16] He has not

24   amended before, there is no bad faith, and much of the discovery has already been completed in this

25   relatively simple case. Thus, if the plaintiff wants to proceed on his negligence claim, he can notify

26

27   _____

28   [16] Opp'n – ECF No. 67 at 4 ("Plaintiff's specific evidence to prove 'Intent' or Willful/Recklessly
     Disregard or Negligently . . . ."), 5 ("This act was a Reckless disregard and negligence for the Plaintiff
     well-being.").

United States District Court
Northern District of California

the court by July 13 by filing a one-page notice of his intent to do so. The court will construe this notice as a supplement to the existing complaint and will not require further amendment.

## CONCLUSION

The court grants Target summary judgment on the assault and battery claims, but the plaintiff plausibly pleads a negligence claim. The plaintiff must notify the court by July 13 whether he wants to proceed on that claim. As previously ordered, the court will hold a case-management conference on July 20.

This resolves ECF No. 64.

**IT IS SO ORDERED.**

Dated: July 7, 2023

_____
LAUREL BEELER
United States Magistrate Judge